Our final case for argument today is Flynn v. Indianapolis. Mr. Lamb. Thank you, Your Honor. Good morning, and may it please the Court, my name is Matthew Lamb. I represent the appellant, Gayle Flynn, on behalf of the estate of her deceased husband. We are here today as a result of the consequences of a police chase that resulted in the death of Ms. Flynn's husband, who was not involved in the chase but was a bystander in an intersection. We'd like to talk about this circuit's Flores case and the concept of raised gestile, of time. And I think we are here under unfortunate circumstances in regards to the aspect, the underlying of this case. Yes, Your Honor. I think that where I'm concerned, starting with Flores, is when we have answered this question, Elizabeth v. Henderson, that Flores comes off the shelf only in non-emergency situations.  And so I guess that's, before I can get to Flores, I have to grapple with Lisby, where we have kind of put bookends on where Flores goes. Yes, Your Honor. So in that case, if we're, I won't need to address the Flores part about it having a different standard. We'll just skip straight to the application of Flores on whether this was an emergent or non-emergent situation. Because if it's emergency, why would we not pull down Lewis to assess this case? I concede that you would have to, Your Honor. I concede that you would have to. So this does narrow things nicely. But we do here. Yes, Your Honor. I appreciate that. So the question becomes, if there is an emergency at time T, the initial stop, or the initial moment, does that emergency last forever? Can an emergency dissipate and allow time for deliberation? Can an emergency change from what it is at the moment to a non-emergent situation? Because if we do look at Lewis and the progeny, including Flores, the underlying motivation, the underlying principle of why we're concerned about what is an emergency and what is a non-emergency, we're concerned about time for deliberation, right? Just as the underlying facts for my client are unfortunate in this situation, the job of the police to protect us is not an easy one. Let me give you a case with time for deliberation and see what you think. Yes. An armed bank robber enters a bank. Yes, Your Honor. He threatens to kill the teller unless the teller gives him the money. The teller pulls the alarm, and the police surround the bank. They broadcast with a megaphone, We have you surrounded. Come out with your hands up. And at that point, the armed robber shoots the teller, who dies. Yes, Your Honor. Are the police liable on the ground that, oh, there's no emergency, they could always just let the bank robber escape? Your Honor, I would say that in that situation, the bank robber has shown a tendency to be explicitly harmful to those around him. Indeed, on your view, that sounds like you're saying, therefore, the police must let the bank robber go free. No, Your Honor. Because the bank robber may carry out his threat. No, Your Honor. In the actual case, there is an ongoing crime, right? Correct. The criminal is fleeing from the police. The crime is ongoing at every minute, and the police are trying to halt the crime. And they decide they will try to halt the crime rather than let the criminal escape. Correct. I don't know why these situations are different. In each one, the police may have had five minutes before the criminal kills an innocent third party. Yes, Your Honor. Why are they constitutionally different? Your Honor, I would go back to where I was going with the danger of the particular suspect in your hypothetical. I would say if you were to let this armed bank robber escape, you're weighing risks at that point. When you do have the time to deliberate, I think that's when we start talking about weighing risks. In my case, the police had the time to deliberate. Correct, Your Honor. Or the Sinaloa cartel threatens to blow up an airplane unless the Attorney General lets El Chapo out of federal prison. Yes. The Attorney General says no. The cartel blows up an airplane as the Attorney General violated the Constitution of the United States. He had plenty of time to think about this. Correct, Your Honor. And I would say that at that time, he had the time to think about it and weigh the risks. And then he made the right decision, just as they made the right decision. Whether it violates the Constitution has nothing to do with whether you agree with the Attorney General's decision. Right? The question in all of these cases is, must the police let a dangerous criminal escape rather than allow the danger to continue? Right? The fleeing felon is a dangerous criminal. The bank robber is a dangerous criminal. The Sinaloa cartel is a bunch of dangerous criminals. Yes, Your Honor. And if the fleeing felon has to be allowed to be let go, I don't understand why the bank robber doesn't have to be let go. They're all dangerous. I agree. In our case, we did not know that there was a fleeing felon. That was not a fact within the consideration. The fact that you were fleeing from the police makes you a felon. It's a violation of felony law in every state in the Union. Okay. The fleeing felon. I apologize. The felony of fleeing rather than the fleeing previous felon. So I apologize for getting confused with the gerund. So the point here is not that they have to let all dangerous criminals go. I disagree with the fundamental question being the fundamental question, Your Honor. You say that as long as it's no longer an emergency, as long as you have time to contemplate, then you've got to let him go. That's why I'm giving you cases where the Attorney General had plenty of time to contemplate. And respectfully, Your Honor, I wholly disagree that that is what we're saying. It certainly comes across as what you're saying. The only thing the police could have done here that, in your view, is consistent with the Constitution is allow this man to escape. As applied to this case? Yes. Allow a dangerous fleeing felon to escape. I'm not taking a position, Your Honor, at all on whether or not they should have or should not have let him go. I am taking a position on whether or not you delivered a different standard. The Constitution required them to let him go. That's what your case is about. Your Honor, we're saying that a reasonable juror could decide that. I'm not saying that— A reasonable juror does not set the meaning of the Constitution. Agreed, Your Honor. But what standard applies? The Supreme Court has announced a constitutional standard, which is whether the police are trying to harm someone or, instead, are just trying to stop a fleeing felon. So, Your Honor, this gets to the distinction between the intent to harm standard and the— But you can't get to the standard until you know are we in an emergency situation or not. Are we engaging in the moment of trying—because that's where the Supreme Court said that's the dividing line of deliberate indifference or intent to harm is what are the circumstances, the context. Correct. And that's why Judge Easterbrook is needing you to answer the question in the case of chasing a fleeing felon. In the case of chasing a fleeing felon, the circumstances can exist such that the emergency dissipates to the point that they should be judged under the deliberate indifference standard and not the intent to harm standard. And you have to answer my question by saying that the police must allow the bank robber to escape. The situations are identical. Some fleeing felons will run down and injure innocent parties. Some armed bank robbers will kill the tellers. Many won't. You can't tell in advance which is which. And the burden of your argument is that as long as the police have time to think, the only answer they can give is let him escape. Your Honor, respectively, there's a false dichotomy in there in that letting them escape is not the only option. Pulling back, calling for air cover to follow the car, putting out any other means of doing this. It doesn't necessarily mean that they have to let them escape. And also, it doesn't mean that they have to even stop the chase. It just means that if they have had time to deliberate, if they do make a mistake, if something unfortunate does happen, it is no longer the intent to harm standard. It is the deliberate indifference standard. And that is the argument that we are making. So is it your suggestion that it is the time to deliberate that changes it from an emergency situation to a non-emergency situation? Yes, Your Honor. Even though the criminal conduct is unchanged? Yes, Your Honor. The felon is still fleeing. The felon is still fleeing. The robber is still in the bank. The robber is still in the bank. The robber is still in the bank. Although I think that those are a bit of an apples and oranges situation between the robber and the bank and this fleeing suspect. But when you have time... If I have time to think about it... Yes, Your Honor. ...as law enforcement, then I have to go home. No, Your Honor. If you have time to think about it, you are judged under a deliberate indifference standard and not the intent to harm standard. You just have a higher duty to be careful. I just don't get this. Deliberate indifference is a form of intent. Correct. To say you were deliberately indifferent to a particular harm is to say you had an intent to cause that harm. There isn't any difference. The holding of Lewis is that you need intent to harm, regardless of how that intent is formed. And you've conceded, I take it, that you're not... These police officers did not intend to harm anyone. Absolutely. Then we all get to go home. I see that I'm out of time, but if I can answer your... Oh, as long as we're asking questions, you can keep giving answers. Yes, Your Honor. So what you're saying you started with is that intent to harm and deliberate indifference are the same thing. And that is the holding of the Supreme Court in Farmer v. Brennan. You are correct. Oh, good. So I read those lines, and honestly, they make very little sense to me. The Flores case... It made sense to the Supreme Court, and that's all we care about. It didn't seem to be what the Flores... The Constitution calls us an inferior court. It didn't seem to be what the Flores case stands for, though, Your Honor. It does seem that the Flores case... The Flores case did not come into play. It was never an emergency in Flores. That's the point. It was never an emergency in Flores. It wasn't that one began and stopped. It was you have a police officer who gratuitously puts people at risk, you know, for no reason. Agreed. Now, one can argue about whether Flores is compatible with Sacramento v. Lillis, but there is no doubt. You concede that there was an emergency situation. We have a fleeing felon, right, and the police have to decide what to do. The decision... They have to decide what's a sin in the world of police. Fair enough, Your Honor. Okay? All right. Thank you, Mr. Land. Mr. Will. There are, of course, no bank robberies in Indianapolis, so I would never raise such a hypothetical with a lawyer for the city. Good afternoon. My name is Alex Will. I meet with Mr. Raymond. We represent the city of Indianapolis and the individual law officers. May it please the court, the district court in this case properly applied the 14th Amendment's intent to harm standard. That summary judgment was faced with a high-speed police pursuit of a suspect who was driving a stolen vehicle, who suddenly backed that vehicle at a high rate of speed into Officer Butler's patrol car and almost struck Officer Butler and Officer Omari Stringer and then fled them on a high-speed pursuit. In its decision in the county of Sacramento v. Lewis, the Supreme Court unambiguously stated that high-speed chases with no intent to harm suspects physically or worsen their legal plight do not give rights to liability under the 14th Amendment. That is the standard that must be applied here. And when applied, there is no evidence of intent to harm either the suspect, Mr. Flynn, or anyone else. As a result, summary judgment should be affirmed in all respects. The primary issue raised by Ms. Flynn in this case is whether the district court should have applied the intent to harm standard or the standard enunciated under Florence. As the court has adequately picked up, the Supreme Court has addressed this and unambiguously said in high-speed pursuit cases that an officer cannot violate the 14th Amendment without showing an intent to harm. And that was a categorical approach. It said high-speed chases, high-speed pursuits. This is exactly what we have here. The evidence is undisputed that there was a high-speed pursuit, that the officers were chasing a suspect who was in possession of a stolen vehicle, who had attempted to strike officers and had struck a patrol car and fled. Moreover, as the court has also noted, Flores is not applicable. Flores did not result from a police pursuit. Flores was a non-emergent situation involving an already-affected traffic stop in which several officers were already on scene. There was no indication of an emergency. Ms. Flynn's counsel has talked at length about time for deliberation. And I think it merits pointing out that time for deliberation, as enunciated in Lewis, is not intended to be a period of time. It recognizes deliberation is an unhurried judgment as opposed to an instantaneous judgment. And I think as this court picked up, in these tense, high-pressure situations, there is a difference between decision-making and deliberation, as considered by the Lewis court in this standard. In fact, there's a footnote that says it's not even the deliberation that occurs in homicide case law where we talk about a moment or an instant of time. They've cited in their brief that Lieutenant Ryder made some decision-making, and he admitted to making some decision-making. Again, it bears noting the decision-making that Lieutenant Ryder was making as a supervisor was not unhurried. It was instantaneous in a situation while his officers were chasing a fleeing suspect. There is a difference between that type of decision-making made in haste, under pressure, and without second chances, and what was in a time for true deliberation, as the Supreme Court considered. Five and a half minutes is not a significant period of time to deliberate. There are thousands of decisions being made in this period. The officers are driving their vehicles, monitoring the vehicle in front of them, monitoring speeds, clearing intersections, and communicating. They are working as a team to carry out. There's not a moment to deliberate, as the Lewis court considered. In fact, Officer Stringer, the lead officer who was following the vehicle, said this. He was expressly asked at what point in time he talked with other officers and made a decision about whether they should pursue, and he said, I never spoke with them. We were engaged in the pursuit. There was never a time for us to say, hey, let's stop real quick and talk about what we have here. We were in the moment. That is what we have here. Based on this and applying this standard, you can see, and I think counsel has conceded here today, there was no intent to harm. The officers made a decision. They made a decision to pursue, and they considered in the heat of the moment to consider that pursuit. Unfortunately, the results are tragic. But that does not mean it was a substantive due process violation. And again, that complies with Lewis, which expressed a concern of expanding due process case law and expanding these substantive due process rights. I think that's what counsel was asked to do here, and I think the court should rely instead on Lewis and Steen and affirm the district court in all respects. Unless there's any questions, thank you for your time. I see none. Thank you very much, counsel. The case is taken under advisement, and the court will be in recess. Thank you.